1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ELDRED NICHOLSON,

11            Plaintiff,                      No. 2:10-cv-1425 KJM EFB P

12        vs.

13   D. MEDINA, et al.,

14            Defendants.                <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16        Plaintiff is a state prisoner proceeding without counsel and in forma pauperis in an action

17   brought under 42 U.S.C. § 1983.[1]  He proceeds against defendants Medina and Shaw on Eighth

18   Amendment claims of deliberate indifference to medical needs.  Defendants move for summary

19   judgment on the grounds that (1) there are no triable issues of material fact on plaintiff's claims

20   of deliberate indifference, and (2) plaintiff failed to exhaust his administrative remedies pursuant

21   to the Prison Litigation Reform Act against Shaw.  As discussed below, the undersigned finds

22   that there is no genuine dispute as to any material fact, and therefore recommends that

23   defendants' motion be granted.

24   ////

25   _____

26        [1] This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C.
     § 636(b)(1).

1    **I.    Background**

2           Unless otherwise noted, the court finds that the following facts are either not disputed by

3    the parties or, following the court's review of the evidence submitted, have been determined to

4    be undisputed.

5           Medina is a licensed physician's assistant.  Defs.' Mot. for Summ. J. ("Defs.' MSJ"),

6    Stmt. of Undisp. Facts in Supp. Thereof ("DF") 1; Pl.'s Response to Defs.' Undisp. Facts, Dckt.

7    No. 45, ("PF") 1.[2]  Shaw is a registered nurse.  DF 4.[3]  While employed by CDCR at High

8    Desert State Prison (HDSP), Medina and Shaw, along with other medical providers, treated

9    plaintiff for an injury to his right wrist.  DF 2[4], 5,  12, 13[5]; PF 12.

10          On June 24, 2009, plaintiff saw a registered nurse for right wrist swelling and pain as a

11   result of an altercation that occurred a few hours earlier.  DF 17; PF 17.  The registered nurse

12   wrote an order for plaintiff to receive an urgent x-ray.  DF 18.[6]  It was also ordered that plaintiff

13   receive 800 milligrams of ibuprofen twice a day for seven days, an Ace wrap, and an ice pack.

14   DF 19; PF 19.  A nurse practitioner also ordered that plaintiff receive an urgent x-ray on the

---

16          [2] Page number citations to plaintiff's filings are to the page number reflected on the
     court's CM/ECF system and not to page numbers assigned by plaintiff.

18          [3] Plaintiff objects to DF 4 on the ground that Shaw no longer works for the California
     Department of Corrections and Rehabilitation (CDCR).  PF 4.  Regardless of where he currently
     works, Shaw is a registered nurse in California working for the CDCR at the time in question.
19   Plaintiff's objection is overruled.

20          [4] Plaintiff objects to DF 2, 5, 25, 49, and 85 on the grounds that he has no personal
     knowledge of these statements of fact.  PF 2, 5, 25, 49, 85.  Defendants cite to admissible
21   evidence to support these statements of fact, none of which relies on plaintiff's personal
     knowledge.  Plaintiff's objections are overruled.

23          [5] Plaintiff objects to DF 13 on the grounds that Medina "did not actually treat plaintiff
     until 7/16/09."  PF 13.  The question of when Medina first treated plaintiff is not relevant to the
     statement of fact asserted in DF 13.  Plaintiff's objection is overruled.

25          [6] In PF 18, plaintiff purports to object to DF 18.  However, PF 18 is a just restatement of
     DF 18 and appears to cite to the same evidence as DF 18 – the July 24, 2009 order for an "urgent
26   x-ray."  *See* Defs.' MSJ, Medina Decl. ("Medina Decl."), Ex. A at 70; PF 18 (citing "Exh. A");
     Pl.'s Am. Opp'n ("Dckt. No. 44"), Ex. A at 23-24.  Plaintiff's objection is overruled.

1   morning of June 25, 2009, and then to follow up with a doctor.  DF 20; PF 20.

2          On June 25, 2009, Shaw saw plaintiff for his right wrist pain.  DF 21; PF 21.  According

3   to Shaw, plaintiff informed him that he felt that the Ace wrap and ice he received the day before

4   made his wrist feel better.  DF 22.  Shaw told plaintiff to keep his wrist iced and to continue to

5   take ibuprofen.  DF 23,[7] 24.  After treating plaintiff, Shaw asked the building staff to provide

6   plaintiff with a bag of ice to help with the swelling of plaintiff's wrist.  DF 25; PF 25.  Shaw

7   could not give plaintiff ice directly because the medical clinic does not have an ice machine.  DF

8   26.[8]  Plaintiff's ibuprofen prescription was also filled that day.  DF 27; PF 27.  At the time,

9   plaintiff had an existing prescription for aspirin to treat high blood pressure.  PF 28, 61.  Plaintiff

10  received aspirin once a day through November 18, 2009.  DF 28.  Aspirin and ibuprofen are

11  nonsteroidal anti-inflammatories commonly used to treat pain and reduce inflammation.  DF 29;

12  PF 29.

13         On July 7, 2009, plaintiff's wrist was x-rayed.  DF 30; PF 30.  The doctor who

14  interpreted the x-ray diagnosed a non-displaced wrist fracture.  DF 31; PF 31.  In a non-displaced

15  fracture, the bone cracks with the broken pieces still in alignment.  DF 33; PF 33.  The injury is

16  not visible from the outside, but shows up as a line or crack on an x-ray.  DF 34; PF 34.  Because

17  plaintiff's bone was not displaced, it did not have to be reset and would heal on its own with

18  ////

19  ////

20

21         [7] Plaintiff objects to this fact, stating, "Plaintiff told Shaw that ibuprofen irritated his
    stomach," and citing "Medina's Declaration, Pg. 4 (21-22)."  PF 23.  However, page four of
22  Medina's declaration shows that plaintiff did not tell Shaw that "ibuprofen was too strong for
    him" until July 22, 2009, and that plaintiff did not inform Medina that he could not take
23  ibuprofen because of an ulcer until August 5, 2009.  Medina Decl. at 4.

24         [8] Plaintiff disputes this fact on the ground that he was previously given ice from the
    clinic.  PF 26.  But the evidence plaintiff cites in support of this statement is just a notation
25  reading "ice pack" on the June 24, 2009 medical record.  *See* PF 26 (citing "Exh. A"); Dckt. No.
    44, Ex. A at 23 (June 24, 2009 medical record).  Plaintiff's evidence does not create a genuine
26  dispute as to whether the medical clinic had an ice machine.

3

time.  DF 35, 36;[9] PF 35.  A cast or splint can be placed on a non-displaced fracture to keep the wrist from moving while it heals, and to help decrease pain and prevent further damage to the fractured bone.  DF 37; PF 37.

On July 14, 2009, Shaw treated plaintiff for plaintiff's complaint of wrist pain.  DF 38; PF 38.  Shaw noted that after Medina reviewed the x-ray of plaintiff's wrist, Medina ordered that a splint be applied for a suspected wrist fracture.  DF 39; PF 39.  Shaw applied a splint to plaintiff's right forearm immobilizing the wrist from the elbow, and ordered that plaintiff's wrist be checked weekly and be re-wrapped as required.  DF 40; PF 40, 82.[10]  Medina and Shaw also wrote an order for plaintiff to receive 800 milligrams of ibuprofen three times a day for 60 days.  DF 41; PF 41.  Medina and Shaw refilled plaintiff's prescription of ibuprofen because plaintiff had previously been prescribed ibuprofen, and because plaintiff was currently taking aspirin.  DF 42; PF 42.

On July 16, 2009, Medina treated plaintiff and noted that plaintiff had decreased range of motion and pain in his wrist.  DF 46; PF 46.  Medina observed mild inflammation over plaintiff's wrist.  DF 47; PF 47.  Medina also spoke with a Dr. Omeere regarding plaintiff's treatment, and Dr. Omeere recommended six weeks of immobilization and x-rays at three and six weeks.  DF

_____

[9] Plaintiff objects to DF 36 with the question, "How can a fracture heal without treatment?"  PF 36.  Plaintiff has not properly objected to DF 36 and does not offer any evidence to dispute DF 36.  Plaintiff's objection is overruled.

[10] Defendants claim that Shaw placed a splint on plaintiff's wrist on June 25, 2009.  DF 24.  They do not cite to medical records or Shaw's declaration to support this statement of fact.  Rather, they cite to a statement made by plaintiff at his deposition.  Plaintiff was explaining his belief that if Shaw had followed the order for an urgent x-ray on June 25, 2009, Medina and Shaw "wouldn't have only gone and put the splint on it, and sent [plaintiff] out to get the cast."  Defs.' MSJ, Beene Decl. ¶ 3, Ex. A, Pl.'s Dep. at 13:21-23.  Because plaintiff's statement is vague as to when his wrist was placed in a splint, the court finds that DF 24 is not adequately supported by the record.
There is also what appears to be an inadvertent discrepancy within plaintiff's opposition regarding the date his wrist was placed in a splint.  In PF 40 he admits his wrist was splinted on July 14, 2009, but in PF 24 he states that his wrist was not splinted until July 16, 2009.  Plaintiff cites to no evidence to support PF 24, and the medical records show that plaintiff's wrist was splinted on July 14, 2009.  Medina Decl., Ex. A at 67.  Thus, there appears to be no genuine dispute as to whether plaintiff's wrist was placed in a splint on July 14, 2009.

48; PF 48.  Medina told plaintiff to alert staff if his symptoms worsened or failed to improve.
DF 49; PF 49.  Medina wrote an order for plaintiff to receive x-rays of his wrist on July 28, 2009
and August 25, 2009, and for plaintiff to return to the medical clinic on July 28, 2009 to assess
how plaintiff's wrist was healing.  DF 50; PF 50.  Medina also completed a Medical Chrono for
plaintiff to receive a wrist brace, and submitted an urgent request for plaintiff to see an
orthopedic surgeon.  DF 51; PF 51.

On July 22, 2009, Shaw treated plaintiff for his complaint of severe pain, and that
ibuprofen was too strong for him and that he wanted something else.  DF 52; PF 52.  Shaw
informed plaintiff that he would be receiving an x-ray for his wrist, and Shaw prescribed plaintiff
325 milligrams of Tylenol (acetaminophen) to take three times a day for 30 days.  DF 53; PF 53.

On July 28, 2009, plaintiff was seen by an orthopedic surgeon.  DF 54; PF 54.  Plaintiff's
wrist was x-rayed and the orthopedic surgeon diagnosed plaintiff's wrist as still fractured.  DF
55; PF 55.  The orthopedic surgeon also recommended that plaintiff be placed in a short-arm cast
for a period of three to four weeks, and then to return for a follow up appointment and x-rays in
one month.  DF 56; PF 56.  Plaintiff received a cast for his wrist on this day.  PF 82.

On August 5, 2009, plaintiff received another x-ray of his wrist.  DF 57; PF 57.  The
doctor who reviewed that x-ray found that plaintiff's wrist had not changed, and plaintiff still
suffered from a non-displaced fracture.  DF 58; PF 58.

On August 5, 2009, plaintiff submitted a written request to receive medication other than
ibuprofen because he had an ulcer.  DF 59.[11]  As a result, Shaw scheduled plaintiff to be seen by
Medina to determine if another medication could be prescribed.  DF 60; PF 60.  Ulcers can be
caused by anti-inflammatory medicines such as aspirin, ibuprofen (Motrin), and naproxen.  DF
44; PF 44.  Medina and Shaw had no knowledge, nor was there any indication, of plaintiff

---

[11] In PF 59, plaintiff purports to object to DF 59.  However, PF 59 is a just restatement of
DF 59 and appears to cite to the same evidence as DF 59 – the August 5, 2009 Health Care
Services Request Form.  *See* Medina Decl., Ex. A at 61; PF 59 (citing  "Ex. I, 61"); Dckt. No.
44, Ex. I at 36.  Plaintiff's objection is overruled.

5

1   having an ulcer when they prescribed him ibuprofen.  DF 45.  According to plaintiff, however,

2   defendants did know that he was taking medications for stomach problems.  PF 45.[12]

3       On August 10, 2009, Medina discontinued plaintiff's prescription of ibuprofen because of

4   plaintiff's complaint that he had an ulcer, and because plaintiff still had current prescriptions for

5   Tylenol and aspirin.  DF 61; PF 61.

6       On August 19, 2009, plaintiff was seen by another doctor who compared plaintiff's July

7   7, 2009 and August 5, 2009 x-rays.  DF 62; PF 62.  That doctor found that there was no definite

8   healing at that time.  DF 63; PF 63.

9       On August 25, 2009, plaintiff saw the orthopedic surgeon again.  DF 64; PF 64.  During

10  the visit, plaintiff's cast was removed, and his wrist was x-rayed.  DF 65; PF 65.  The orthopedic

11  surgeon found that plaintiff's fracture line was healing.  DF 66; PF 66.  He also noted that

12  plaintiff was still experiencing pain.  DF 67; PF 67.  He placed plaintiff in a splint for

13  immobilization, and recommended that plaintiff return for a follow-up appointment in one

14  month.  DF 68; PF 68.

15      On August 31, 2009, another x-ray of plaintiff's wrist was taken.  DF 69; PF 69.  The x-

16  ray showed that plaintiff's wrist was continuing to heal with no other appreciable changes.  DF

17  70; PF 70.

18      On September 7, 2009, plaintiff submitted a Health Care Request Form complaining that

19  he had numbness and pain in his wrist.  DF 71; PF 71.

20      On September 8, 2009, Shaw placed another splint on plaintiff's arm, and noted that a

21  request for plaintiff to see an orthopedic surgeon was submitted.  DF 72, 73; PF 72, 73.  Later

22  that day, Medina observed that plaintiff's wrist had a bruise that was not noticed by Shaw or

23  ////

24

25      [12] PF 45 cites to "production of documents # 21 & 34," which were filed with plaintiff's
    January 3, 2012 response to defendants' summary judgment motion.  *See* Pl.'s Response to
26  Defs.' MSJ, Dckt. No. 38, at 23-24.

himself prior to that appointment.  DF 74.[13]  Plaintiff complained that his wrist was causing him

pain and that he wanted something other than ibuprofen.  DF 75; PF 75.  Medina submitted a

request for plaintiff to see an orthopedic surgeon, and Medina also spoke with a Dr. Nepomucino

who stated that narcotic pain relief was not indicated for plaintiff's wrist pain.  DF 76; PF 76.

As a result, Medina prescribed plaintiff 325 milligrams of Tylenol (KOP) to take three times a

day as needed for his wrist pain for 30 days.   DF 77; PF 77.  Tylenol is a pain reliever that does

not cause ulcers.  DF 78; PF 78.  KOP means "keep on person," which allows an inmate to keep

the medication with him, so that he does not need to come into the clinic in order to receive it.

DF 79; PF 79.

On September 17, 2009, Shaw treated plaintiff for his complaint that he had shooting

pains in his wrist since he injured his hand in June.  DF 80; PF 80.  Shaw opined that plaintiff's

problem with pain appeared to be neurologic in nature, possibly carpel tunnel, and wrote an

order for plaintiff to be seen by the yard physician and possibly receive a new consultation with

the orthopedic surgeon.  DF 83; PF 83.

On September 23, 2009, plaintiff was treated by Dr. Nepomucino for his wrist pain.  DF

84; PF 84.  Dr. Nepomucino reviewed plaintiff's medical records, notes from the orthopedic

surgeon, and spoke with Medina about prescribing plaintiff Tylenol rather than narcotics for

pain.  DF 85; PF 85.  Dr. Nepomucino concurred that Tylenol was the appropriate medication for

managing plaintiff's wrist pain.  DF 86; PF 86.

On September 29, 2009, plaintiff was seen by the orthopedic surgeon who, after

reviewing an x-ray, diagnosed that plaintiff's wrist was completely healed.  DF 87; PF 87.  He

advised plaintiff to use physical therapy to try to regain the remainder of his range of motion and

strength, and discharged plaintiff from his care.  DF 88; PF 88.  Medina submitted a request for

[13] Plaintiff objects to this statement of fact, stating "Medina only placed a splint on
plaintiff's wrist."  PF 74 (citing "Shaw Declaration Pg. 3 (13+14)").  The evidence plaintiff cites
supports DF 73, that Shaw put a splint on plaintiff's arm on September 8, 2009.  *See* Defs.'
MSJ, Shaw Decl. ("Shaw Decl.") at 3:13-14.  Plaintiff's objection to DF 74 is overruled.

7

1   plaintiff to receive physical therapy, which was approved on October 22, 2009.  DF 89; PF 89.

2   Plaintiff continued to be prescribed Tylenol for any wrist pain.  DF 90; PF 90.

3   **II.    Summary Judgment Standards**

4           Summary judgment is appropriate when there is "no genuine dispute as to any material

5   fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary

6   judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

7   to the determination of the issues in the case, or in which there is insufficient evidence for a jury

8   to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

9   (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

10  *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

11  motion asks whether the evidence presents a sufficient disagreement to require submission to a

12  jury.

13          The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

14  or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

15  "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

16  trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

17  (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

18  under summary judgment practice, the moving party bears the initial responsibility of presenting

19  the basis for its motion and identifying those portions of the record, together with affidavits, if

20  any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

21  U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

22  party meets its burden with a properly supported motion, the burden then shifts to the opposing

23  party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

24  *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

25  ////

26  ////

1    A clear focus on where the burden of proof lies as to the factual issue in question is

2    crucial to summary judgment procedures.  Depending on which party bears that burden, the party

3    seeking summary judgment does not necessarily need to submit any evidence of its own.  When

4    the opposing party would have the burden of proof on a dispositive issue at trial, the moving

5    party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

6    *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

7    which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

8    24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

9    issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

10   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

11   should be entered, after adequate time for discovery and upon motion, against a party who fails

12   to make a showing sufficient to establish the existence of an element essential to that party's

13   case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

14   circumstance, summary judgment must be granted, "so long as whatever is before the district

15   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

16   satisfied." *Id.* at 323.

17   To defeat summary judgment the opposing party must establish a genuine dispute as to a

18   material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

19   that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.

20   at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

21   law will properly preclude the entry of summary judgment.").  Whether a factual dispute is

22   material is determined by the substantive law applicable for the claim in question.  *Id.*  If the

23   opposing party is unable to produce evidence sufficient to establish a required element of its

24   claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

25   an essential element of the nonmoving party's case necessarily renders all other facts

26   immaterial." *Celotex*, 477 U.S. at 322.

9

1    Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

2    the court must again focus on which party bears the burden of proof on the factual issue in

3    question.  Where the party opposing summary judgment would bear the burden of proof at trial

4    on the factual issue in dispute, that party must produce evidence sufficient to support its factual

5    claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

6    *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

7    or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

8    for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

9    demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

10   that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

11   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

12   The court does not determine witness credibility.  It believes the opposing party's

13   evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

14   *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

15   proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

16   *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

17   dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

18   at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

19   (9th Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational

20   trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

21   475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

22   Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

24   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25   'genuine issue for trial.'"  *Id.*  If the evidence presented and any reasonable inferences that might

26   be drawn from it could not support a judgment in favor of the opposing party, there is no genuine

1    issue. *Celotex.*, 477 U.S. at 323. Thus, Rule 56 serves to screen cases lacking any genuine

2    dispute over an issue that is determinative of the outcome of the case.

3    On January 12, 2011, the undersigned informed plaintiff of the requirements for opposing

4    a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154

5    F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v.*

6    *Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

7    **III.     Deliberate Indifference Standard Under the Eighth Amendment**

8    A prison official violates the Eighth Amendment's proscription of cruel and unusual

9    punishment where he or she deprives a prisoner of the minimal civilized measure of life's

10   necessities with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834

11   (1994). To prevail, plaintiff must show both that his medical needs were objectively serious, and

12   that defendant possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294,

13   297-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992). A serious medical

14   need is one that significantly affects an individual's daily activities, an injury or condition a

15   reasonable doctor or patient would find worthy of comment or treatment, or the existence of

16   chronic and substantial pain. *See, e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir.

17   1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997)

18   (*en banc*).

19   Deliberate indifference may be shown by the denial, delay or intentional interference

20   with medical treatment or by the way in which medical care is provided. *Hutchinson v. United*

21   *States*, 838 F.2d 390, 394 (9th Cir. 1988). To act with deliberate indifference, a prison official

22   must both be aware of facts from which the inference could be drawn that a substantial risk of

23   serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837

24   (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious

25   harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t

26   is enough that the official acted or failed to act despite his knowledge of a substantial risk of

serious harm." *Id.* at 842.  A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case.  *Id.*  However, it is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).  It is well established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

## IV.    Discussion

Defendants seek summary judgment on plaintiff's Eighth Amendment deliberate indifference to medical needs claims, arguing that there are no triable issues of material fact.[14] Dckt. No. 30.  Their evidence shows that plaintiff received extensive medical care and treatment for his June 24, 2009 wrist injury, which was completely healed as of September 29, 2009.  It shows that when plaintiff sought treatment from either Shaw or Medina, they responded by providing plaintiff with pain medication and splinting plaintiff's wrist and placing it in a cast to immobilize it as it healed.  Defendants also referred plaintiff for multiple x-rays, referred plaintiff to see both the yard doctor and orthopedic specialists, and followed the treatment recommended by those physicians.  Defendants contend that there is no evidence that they were

---

[14] Defendants' motion also argues that plaintiff's claim against Shaw should be dismissed as unexhausted under the Prisoner Litigation Reform Act.  Because the undersigned finds defendants are entitled to summary judgment on alternate grounds, this issue need not be addressed.

1 deliberately indifferent to plaintiff's medical needs or disregarded a serious risk to plaintiff's

2 health.

3        Plaintiff opposes defendants' motion arguing that there are genuine disputes for trial

4 regarding (1) whether defendants prescribed ibuprofen to plaintiff knowing that plaintiff had

5 stomach problems, (2) whether Shaw failed to provide plaintiff with ice and misdiagnosed

6 plaintiff's fracture as a sprain on June 25, 2009, and (3) whether defendants unreasonably

7 delayed in getting plaintiff's wrist x-rayed and splinted.[15]  As discussed below, the court finds

8 that there is no evidence to establish a genuine issue of fact as to whether either defendant acted

9 with the requisite deliberate indifference for an Eighth Amendment claim.

10       Plaintiff claims that defendants consciously disregarded a substantial risk of serious harm

11 by prescribing him ibuprofen when they knew that he had stomach problems and was taking

12 medications for those problems.  Dckt. No. 44 at 15, 19, 48-49.  Plaintiff states that one of the

13 medications to treat his stomach problems, including acid reflux, is omeprazole, and submits

14 evidence that defendants were aware of plaintiff's prescription for omeprazole when they

15 prescribed him ibuprofen.  *Id.* at 15, 48; *see also id.* at 59 (showing plaintiff was prescribed

16 omeprazole from May 22, 2009 through July 15, 2009), 57 (showing that Medina refilled the

17 omeprazole prescription on July 15, 2009); Dckt. No. 38 at 23 (showing that on or around July 9,

18 2009, Shaw and Medina may have authorized a refill of plaintiff's omeprazole prescription).

19 Additionally, plaintiff submits evidence that medical staff told him "not to take ibuprofen

20 because it would cause more harm and damage to [his] stomach."  Dckt. No. 44 at 49.

21       Plaintiff has produced evidence suggesting that defendants were aware that plaintiff had

22 stomach problems when they refilled his ibuprofen prescriptions, and that doing so may have

23

24       [15] As stated in the April 11, 2012 order, the court has considered all four of plaintiff's
filings in opposition to defendants' motion.  Dckt. No. 47 (referring to Dckt. Nos. 38, 39, 44,
25 45).  The court mostly cites to plaintiff's March 15, 2012 filing (Dckt. No. 44), because it mostly
repeats or expands upon plaintiff's earlier filings (Dckt. Nos. 38, 39).  In resolving defendants'
26 motion, the court has also considered defendants' two responses to plaintiff's filings.  *See* Dckt.
Nos. 41, 48.

posed a risk to plaintiff's health.  However, there is no evidence that defendants purposefully

chose ibuprofen in a conscious disregard to plaintiff's health.  It is undisputed that Medina and

Shaw refilled plaintiff's ibuprofen prescription in response to plaintiff's complaints of pain

because plaintiff had previously been prescribed ibuprofen, and because plaintiff was currently

taking aspirin.  DF 42; PF 42.  Defendants note that like ibuprofen, aspirin can cause ulcers, but

that plaintiff had been taking aspirin with no complaints.  Defs.' MSJ, Mem. of P. & A. in Supp.

Thereof at 16; DF 28, 42, 61.  Additionally, it remains undisputed that when defendants

prescribed ibuprofen to plaintiff, they did not know that plaintiff had an ulcer.  DF 45.  When

plaintiff complained to Shaw that ibuprofen was "too strong," Shaw ordered Tylenol for

plaintiff, a pain reliever that does not cause ulcers.  DF 52, 53, 78; PF 52, 53, 28.  And when

plaintiff complained to Shaw that he could not take ibuprofen because of an ulcer, Shaw

scheduled plaintiff to be seen by Medina to determine if another medication could be prescribed.

DF 59, 60.  Shortly thereafter, Medina discontinued plaintiff's ibuprofen prescription, but left the

Tylenol prescription in place.  DF 61.

Drawing all reasonable inferences from the facts in favor of plaintiff, the court finds that

there is no genuine dispute as to whether defendants acted with a sufficiently culpable state of

mind for purposes of an Eighth Amendment claim.  At worst, a reasonable jury could infer that

defendants were negligent in prescribing ibuprofen to plaintiff.  A showing of negligence,

however, is not sufficient to establish deliberate indifference.  *See Estelle*, 429 U.S. at 106 (claim

that defendant was negligent in providing medical treatment is not sufficient to state an Eighth

Amendment claim).  To the extent that plaintiff claims that none of the pain relievers offered to

him were sufficient to treat his pain, *see* Dckt. No. 38 at 5, he establishes, at best, his

disagreement with the defendants' decisions in this regard.  It is well established that mere

differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

Amendment violation.  *Jackson*, 90 F.3d at 332; *Franklin*, 662 F.2d at 1344.

////

1    Plaintiff also contends that there is an issue for trial on the ground that Shaw failed to

2    provide him with ice on June 25, 2009.  Dckt. No. 44 at 49-50.  However, plaintiff admits that on

3    June 25, 2009, Shaw called the building officer and instructed him to supply plaintiff with ice.

4    *Id.* at 50, 67 (Ex. H).  And it is undisputed that Shaw could not give plaintiff ice directly because

5    there was no ice machine in the medical clinic.  DF 26.  Plaintiff complains that the staff in his

6    building never provided him with the ice, Dckt. No. 44 at 50, but there is no evidence that Shaw

7    knew about this.  Accordingly, no reasonable trier of fact could find that Shaw knowingly

8    exposed plaintiff to a substantial risk of serious harm or the unnecessary and wanton infliction of

9    pain.

10    According to plaintiff, Shaw also misdiagnosed plaintiff's wrist injury as a sprain on June

11    25, 2009.  *Id.* at 13.  Evidence that Shaw misdiagnosed plaintiff's injury, however, is not

12    evidence of deliberate indifference.  As a triage nurse, all of the treatment that Shaw could

13    provide was under the direction of a doctor, a nurse practitioner, or a physician's assistant.  DF

14    7, 8; PF 7, 8.  When Shaw saw plaintiff on June 25, 2009, he provided treatment consistent with

15    the treatment provided one day earlier by a nurse practitioner, including prescribing pain

16    medication and instructing plaintiff to ice his hand.  DF 19, 23, 25; PF 19, 25.  Additionally, the

17    request for an x-ray had already been made.  DF 18, 20; PF 18, 20.  There is no evidence that

18    Shaw intentionally disregarded an excessive risk to plaintiff's health on June 25, 2009.

19    Plaintiff contends that defendants were deliberately indifferent to his wrist injury because

20    his wrist was not x-rayed until July 7, 2009 and was not placed in a splint until July 14, 2009.

21    For the x-ray argument, plaintiff relies on the nurse practitioner's June 24, 2009 note for an

22    "urgent x-ray," and to defendants' evidence suggesting that the type of fracture sustained by

23    plaintiff is only visible on an x-ray.  Dckt. No. 44 at 1, 2-4, 6, 11, 14, 18, 47-48; *see also* DF 34.

24    The evidence certainly suggests that an x-ray was urgently needed to diagnose plaintiff's injury.

25    ////

26    ////

15

1   But the responsibility for locating an outside provider and scheduling the appointment based

2   upon the outside providers' availability rested with the prison's Utilization Management

3   schedulers. DF 15, 16; PF 15, 16. Neither Shaw nor Medina could schedule the x-ray for

4   plaintiff. PF 14; DF 14. While plaintiff waited for the x-ray, he received medical attention,

5   including pain medication and ice. DF 19, 27; PF 19, 27; Dckt. No. 44 at 13 (listing dates

6   plaintiff visited "medical" as June 25, 2009, June 26, 2009, June 30, 2009, July 1, 2009, and July

7   3, 2009). Plaintiff fails to show that defendants ignored or purposefully delayed the request for

8   an urgent x-ray, or that the two week wait caused him any additional harm. *See McGuckin*, 974

9   F.2d at 1060 (delay in medical care must lead to further injury for deliberate indifference claim).

10       Plaintiff also argues that defendants were aware that his wrist was diagnosed as fractured

11  on July 7, 2009, but unreasonably delayed by waiting until July 14, 2009 to provide him with a

12  splint. Dckt. No. 44 at 15, 18-19. Plaintiff relies on the July 7, 2009 x-ray report, which

13  diagnoses plaintiff's injury as a non-displaced fracture and states, "URGENT FAX - PLEASE

14  SHOW TO THE DOCTOR IMMEDIATELY." *Id.* at 15 (Ex. G), 19. The x-ray report notes

15  that the referring provider was the nurse practitioner who requested the x-ray on June 24, 2009,

16  not Medina or Shaw. *Id.*; *see also* DF 20; PF 20. Thus, it cannot be reasonably inferred from

17  this evidence that either Medina or Shaw were notified of the x-ray report prior to July 14, 2009,

18  when they provided plaintiff with a splint. Plaintiff also points his Health Care Services Request

19  Forms, but only one of them pre-dates July 14, 2009. *See* Dckt. No. 44 at 18, Ex. I at 37. In that

20  request, dated July 6, 2009, plaintiff complained that he had not yet been seen by a doctor for his

21  pain. *Id.* The request reflects that a triage nurse saw plaintiff for his complaint on July 7, 2009

22  and referred plaintiff to the "MD line." *Id.* There is no evidence that Shaw or Medina had any

23  notice of plaintiff's July 6, 2009 request or July 7, 2009 appointment with the triage nurse.

24  While plaintiff's evidence shows that he was also seen by "medical" on July 8, 2009, July 9,

25  2009, and July 10, 2009, *id.* at 13, it does not show that he was treated by either Shaw or Medina

26  on those dates. There simply is no evidence suggesting that defendants knew about the July 7,

16

2009 x-ray report prior to July 14, 2009.  Thus, plaintiff fails to raise a genuine dispute as to whether defendants purposefully ignored the July 7, 2009 x-ray report or purposefully delayed in providing plaintiff with a splint.

The evidence establishes that Shaw and Medina provided plaintiff with appropriate medical care to treat his wrist injury.  Plaintiff has failed to present any evidence that defendants responded to his wrist injury with deliberate indifference.  When the evidence is viewed in the light most favorable to plaintiff, and reasonable inferences are drawn in his favor, no reasonable jury could return a verdict for him and against defendants.  Defendants are therefore entitled to judgment as a matter of law.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (Dckt. No. 30) be granted;

2. The Clerk be directed to enter judgment in defendants' favor; and

3. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 27, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

17