IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELDRED NICHOLSON,

        Plaintiff,                     No. 2:10-cv-1425 KJM EFB P

    vs.

D. MEDINA, et al.,

        Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

      Plaintiff is a state prisoner proceeding without counsel and in forma pauperis in an action brought under 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

      Plaintiff proceeds against defendants Medina and Shaw on Eighth Amendment claims of deliberate indifference to medical needs. Defendants move for summary judgment on the grounds that (1) there are no triable issues of material fact on plaintiff's claims of deliberate indifference, and (2) plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act against Shaw.[1]  As discussed below, the undersigned finds that there is no

---

[1] Defendants' motion, originally filed on October 7, 2011, was re-filed and re-served on August 3, 2012, in accordance with the court's August 2, 2012 order. *See* Dckt. No. 53 (vacating June 28, 2012 findings and recommendations to grant defendants' October 7th motion

1

genuine dispute as to any material fact, and therefore recommends that defendants' motion be granted.

## I.     Background

Unless otherwise noted, the court finds that the following facts are either not disputed by the parties or, following the court's review of the evidence submitted, have been determined to be undisputed.

Medina is a licensed physician's assistant. Defs.' Mot. for Summ. J. ("Defs.' MSJ"), Stmt. of Undisp. Facts in Supp. Thereof ("DF") 1; Pl.'s Opp'n to Defs.' Undisp. Facts, Dckt. No. 55, ("PF") 1. Shaw is a registered nurse. DF 4.[2] While employed by the California Department of Corrections (CDCR) at High Desert State Prison (HDSP), Medina and Shaw, along with other medical providers, treated plaintiff for an injury to his right wrist. DF 2[3], 5, 12, 13[4]; PF 12.

On June 24, 2009, plaintiff saw a registered nurse for right wrist swelling and pain as a result of an altercation that occurred a few hours earlier. DF 17; PF 17. The registered nurse wrote an order for plaintiff to receive an urgent x-ray. DF 18.[5] It was also ordered that plaintiff

---

and directing defendants to re-serve the motion along with the notice to plaintiff required by *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012)). On August 23rd, plaintiff filed an amended opposition to the motion, Dckt. Nos. 55, 56, and on September 6th, defendants filed a reply, Dckt. No. 57.

[2] Plaintiff objects to DF 4 on the ground that Shaw no longer works for the California Department of Corrections and Rehabilitation (CDCR). PF 4. Regardless of where he currently works, Shaw was a registered nurse in California working for CDCR at the time in question. Plaintiff's objection is overruled.

[3] Plaintiff objects to DF 2, 5, 25, 49, and 85 on the grounds that he has no personal knowledge of these statements of fact. PF 2, 5, 25, 49, 85. Defendants cite to admissible evidence to support these statements of fact, none of which relies on plaintiff's personal knowledge. Plaintiff's objections are overruled.

[4] Plaintiff objects to DF 13 on the grounds that Medina "did not actually treat plaintiff until 7/16/09." PF 13. The question of when Medina first treated plaintiff is not relevant to the statement of fact asserted in DF 13. Plaintiff's objection is overruled.

[5] In PF 18, plaintiff purports to object to DF 18. However, PF 18 is a merely a restatement of DF 18 and appears to cite to the same evidence as DF 18 – the July 24, 2009 order for an "urgent x-ray." *See* Defs.' MSJ, Medina Decl. ("Medina Decl."), Ex. A at 70; PF 18

1  receive 800 milligrams of ibuprofen twice a day for seven days, an Ace wrap, and an ice pack.
2  DF 19; PF 19.  A nurse practitioner also ordered that plaintiff receive an urgent x-ray on the
3  morning of June 25, 2009, and then follow up with a doctor.  DF 20; PF 20.

4        On June 25, 2009, Shaw saw plaintiff for his right wrist pain.  DF 21; PF 21.  According
5  to Shaw, plaintiff informed him that he felt that the Ace wrap and ice he received the day before
6  made his wrist feel better.  DF 22.  Shaw told plaintiff to keep his wrist iced and to continue to
7  take ibuprofen.  DF 23,[6] 24.  After treating plaintiff, Shaw asked the building staff to provide
8  plaintiff with a bag of ice to help with the swelling of plaintiff's wrist.  DF 25.  Shaw could not
9  give plaintiff ice directly because the medical clinic does not have an ice machine.  DF 26.[7]
10  Plaintiff's ibuprofen prescription was also filled that day.  DF 27; PF 27.  At the time, plaintiff
11  had an existing prescription for aspirin to treat high blood pressure.  PF 28, 61.  Plaintiff received
12  aspirin once a day through November 18, 2009.  DF 28.  Aspirin and ibuprofen are nonsteroidal
13  anti-inflammatories commonly used to treat pain and reduce inflammation.  DF 29; PF 29.

14        On July 7, 2009, plaintiff's wrist was x-rayed.  DF 30; PF 30.  The doctor who
15  interpreted the x-ray diagnosed a non-displaced wrist fracture.  DF 31; PF 31.  In a non-displaced
16  fracture, the bone cracks with the broken pieces still in alignment.  DF 33; PF 33.  The injury is
17  not visible from the outside, but shows up as a line or crack on an x-ray.  DF 34; PF 34.  Because
18  plaintiff's bone was not displaced, it did not have to be reset and would heal on its own with

---

(citing "Exh. A"); Pl.'s Am. Opp'n ("Dckt. No. 56"), Ex. A.  Plaintiff's objection is overruled.

[6] Plaintiff objects to this fact, stating, "Plaintiff told Shaw that ibuprofen irritated his stomach," and citing "Medina's Declaration, Pg. 4 (21-22)."  PF 23.  However, page four of Medina's declaration shows that plaintiff did not tell Shaw that "ibuprofen was too strong for him" until July 22, 2009, and that plaintiff did not inform Medina that he could not take ibuprofen because of an ulcer until August 5, 2009.  Medina Decl. at 4.

[7] Plaintiff disputes this fact on the ground that he was previously given ice from the clinic.  PF 26.  But the evidence plaintiff cites in support of this statement is just a notation reading "ice pack" on the June 24, 2009 medical record.  *See* PF 26 (citing "Exh. A"); Dckt. No. 56, Ex. A (June 24, 2009 medical record).  Plaintiff's evidence does not create a genuine dispute as to whether the medical clinic had an ice machine.  Nor it the question material to the claim of deliberate indifference.

3

time. DF 35, 36;[8] PF 35. A cast or splint can be placed on a non-displaced fracture to keep the wrist from moving while it heals, and to help decrease pain and prevent further damage to the fractured bone. DF 37; PF 37.

On July 14, 2009, Shaw treated plaintiff for plaintiff's complaint of wrist pain. DF 38; PF 38. Shaw noted that after Medina reviewed the x-ray of plaintiff's wrist, Medina ordered that a splint be applied for a suspected wrist fracture. DF 39; PF 39. Shaw applied a splint to plaintiff's right forearm immobilizing the wrist from the elbow, and ordered that plaintiff's wrist be checked weekly and be re-wrapped as required. DF 40; PF 40, 82.[9] Medina and Shaw also wrote an order for plaintiff to receive 800 milligrams of ibuprofen three times a day for 60 days. DF 41; PF 41. They did so because plaintiff had previously been prescribed ibuprofen, and because plaintiff was currently taking aspirin. DF 42; PF 42.

On July 16, 2009, Medina treated plaintiff and noted that plaintiff had decreased range of motion and pain in his wrist. DF 46; PF 46. Medina observed mild inflammation over plaintiff's wrist. DF 47.[11] Medina also spoke with a Dr. Omeere regarding plaintiff's treatment, and Dr.

---

[8] Plaintiff objects to DF 36 with the question, "How can a fracture heal without treatment?" PF 36. Plaintiff has not properly objected to DF 36 and does not offer any evidence to dispute DF 36. Plaintiff's objection is overruled.

[9] Defendants claim that Shaw placed a splint on plaintiff's wrist on June 25, 2009. DF 24. They do not cite to medical records or Shaw's declaration to support this statement of fact. Rather, they cite to a statement made by plaintiff at his deposition. Plaintiff was explaining his belief that if Shaw had followed the order for an urgent x-ray on June 25, 2009, Medina and Shaw "wouldn't have only gone and put the splint on it, and sent [plaintiff] out to get the cast." Defs.' MSJ, Beene Decl. ¶ 3, Ex. A, Pl.'s Dep. at 13:21-23. Because plaintiff's statement is vague as to when his wrist was placed in a splint, DF 24 is not adequately supported by the record.

There is also what appears to be an inadvertent discrepancy within plaintiff's opposition regarding the date his wrist was placed in a splint. In PF 40 he admits that his wrist was splinted on July 14, 2009, but in PF 24 he states that his wrist was not splinted until July 16, 2009. Plaintiff cites to no evidence to support PF 24, and the medical records show that plaintiff's wrist was splinted on July 14, 2009. Medina Decl., Ex. A at 67. Thus, there appears to be no genuine dispute as to whether plaintiff's wrist was placed in a splint on July 14, 2009.

[11] In PF 47, plaintiff purports to object to DF 47 on the ground that he "had weakness and numbness." Plaintiff's assertion in this regard does not create a genuine dispute as to whether

4

Omeere recommended six weeks of immobilization and x-rays at three and six weeks. DF 48; PF 48. Medina told plaintiff to alert staff if his symptoms worsened or failed to improve. DF 49. Medina wrote an order for plaintiff to receive x-rays of his wrist on July 28, 2009 and August 25, 2009, and for plaintiff to return to the medical clinic on July 28, 2009 to assess how plaintiff's wrist was healing. DF 50; PF 50. Medina also completed a Medical Chrono for plaintiff to receive a wrist brace, and submitted an urgent request for plaintiff to see an orthopedic surgeon. DF 51; PF 51.

On July 22, 2009, Shaw treated plaintiff for his complaints of severe pain, and that ibuprofen was too strong for him and he wanted something else. DF 52; PF 52. Shaw informed plaintiff that he would be receiving an x-ray for his wrist, and Shaw prescribed plaintiff 325 milligrams of Tylenol (acetaminophen) to take three times a day for 30 days. DF 53; PF 53.

On July 28, 2009, plaintiff was seen by an orthopedic surgeon. DF 54; PF 54. Plaintiff's wrist was x-rayed and the orthopedic surgeon diagnosed plaintiff's wrist as still fractured. DF 55; PF 55. The orthopedic surgeon also recommended that plaintiff be placed in a short-arm cast for a period of three to four weeks, and then to return for a follow up appointment and x-rays in one month. DF 56; PF 56. Plaintiff received a cast for his wrist on this day. PF 82.

On August 5, 2009, plaintiff received another x-ray of his wrist. DF 57; PF 57. The doctor who reviewed that x-ray found that plaintiff's wrist had not changed, and plaintiff still suffered from a non-displaced fracture. DF 58; PF 58.

On August 5, 2009, plaintiff submitted a written request to receive medication other than ibuprofen because he had an ulcer. DF 59.[12] As a result, Shaw scheduled plaintiff to be seen by Medina to determine if another medication could be prescribed. DF 60; PF 60. Ulcers can be

---

Medina observed mild inflammation over plaintiff's wrist.

[12] In PF 59, plaintiff purports to object to DF 59. However, PF 59 is a just restatement of DF 59 and appears to cite to the same evidence as DF 59 – the August 5, 2009 Health Care Services Request Form. *See* Medina Decl., Ex. A at 61; PF 59 (citing "Ex. I, 61"); Dckt. No. 56, Ex. I. Plaintiff's objection is overruled.

5

caused by anti-inflammatory medicines such as aspirin, ibuprofen (Motrin), and naproxen. DF 44; PF 44. Medina and Shaw claim they had no knowledge, and that there was no indication, of plaintiff having an ulcer when they prescribed him ibuprofen. DF 45. According to plaintiff, however, defendants did know that he was taking medications for stomach problems. PF 45.[13]

On August 10, 2009, Medina discontinued plaintiff's prescription of ibuprofen because of plaintiff's complaint that he had an ulcer, and because plaintiff still had current prescriptions for Tylenol and aspirin. DF 61; PF 61.

On August 19, 2009, plaintiff was seen by another doctor who compared plaintiff's July 7, 2009 and August 5, 2009 x-rays. DF 62; PF 62. That doctor found that there was no definite healing at that time. DF 63; PF 63.

On August 25, 2009, plaintiff saw the orthopedic surgeon again. DF 64; PF 64. During the visit, plaintiff's cast was removed, and his wrist was x-rayed. DF 65; PF 65. The orthopedic surgeon found that plaintiff's fracture line was healing. DF 66; PF 66. He also noted that plaintiff was still experiencing pain. DF 67; PF 67. He placed plaintiff in a splint for immobilization, and recommended that plaintiff return for a follow-up appointment in one month. DF 68; PF 68.

On August 31, 2009, another x-ray of plaintiff's wrist was taken. DF 69; PF 69. The x-ray showed that plaintiff's wrist was continuing to heal with no other appreciable changes. DF 70; PF 70.

On September 7, 2009, plaintiff submitted a Health Care Request Form complaining that he had numbness and pain in his wrist. DF 71; PF 71.

On September 8, 2009, Shaw placed another splint on plaintiff's arm, and noted that a request for plaintiff to see an orthopedic surgeon was submitted. DF 72, 73; PF 72, 73. Later that day, Medina observed that plaintiff's wrist had a bruise that was not noticed by Shaw or

---

[13] PF 45 cites to "production of documents # 21 & 34," which were filed with plaintiff's response to defendants' summary judgment motion. *See* Dckt. No. 55, Exs. D, E.

6

himself prior to that appointment. DF 74.[14] Plaintiff complained that his wrist was causing him pain and that he wanted something other than ibuprofen. DF 75; PF 75. Medina submitted a request for plaintiff to see an orthopedic surgeon, and Medina also spoke with a Dr. Nepomucino who stated that narcotic pain relief was not indicated for plaintiff's wrist pain. DF 76; PF 76. As a result, Medina prescribed plaintiff 325 milligrams of Tylenol (KOP) to take three times a day as needed for his wrist pain for 30 days. DF 77; PF 77. Tylenol is a pain reliever that does not cause ulcers. DF 78; PF 78. KOP means "keep on person," which allows an inmate to keep the medication with him, so that he does not need to come into the clinic in order to receive it. DF 79; PF 79.

On September 17, 2009, Shaw treated plaintiff for his complaint that he had shooting pains in his wrist since he injured his hand in June. DF 80; PF 80. Shaw opined that plaintiff's problem with pain appeared to be neurologic in nature, possibly carpel tunnel, and wrote an order for plaintiff to be seen by the yard physician and possibly receive a new consultation with the orthopedic surgeon. DF 83; PF 83.

On September 23, 2009, plaintiff was treated by Dr. Nepomucino for his wrist pain. DF 84; PF 84. Dr. Nepomucino reviewed plaintiff's medical records, notes from the orthopedic surgeon, and spoke with Medina about prescribing plaintiff Tylenol rather than narcotics for pain. DF 85. Dr. Nepomucino concurred that Tylenol was the appropriate medication for managing plaintiff's wrist pain. DF 86; PF 86.

On September 29, 2009, plaintiff was seen by the orthopedic surgeon who, after reviewing an x-ray, diagnosed that plaintiff's wrist was completely healed. DF 87; PF 87. He advised plaintiff to use physical therapy to try to regain the remainder of his range of motion and strength, and discharged plaintiff from his care. DF 88; PF 88. Medina submitted a request for

---

[14] Plaintiff objects to this statement of fact, stating "Medina only placed a splint on plaintiff's wrist." PF 74 (citing "Shaw Declaration Pg. 3 (13+14)"). The evidence plaintiff cites supports DF 73, that Shaw put a splint on plaintiff's arm on September 8, 2009. *See* Defs.' MSJ, Shaw Decl. ("Shaw Decl.") at 3:13-14. Plaintiff's objection to DF 74 is overruled.

7

plaintiff to receive physical therapy, which was approved on October 22, 2009.  DF 89; PF 89.  Plaintiff continued to be prescribed Tylenol for any wrist pain.  DF 90; PF 90.

## II.     Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

////

////

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

9

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine

10

issue. *Celotex.*, 477 U.S. at 323. Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Defendants' re-filed motion for summary judgment included a notice to plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III.  Deliberate Indifference Standard Under the Eighth Amendment**

A prison official violates the Eighth Amendment's proscription of cruel and unusual punishment where he or she deprives a prisoner of the minimal civilized measure of life's necessities with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992). A serious medical need is one that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain. *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).

Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t

is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.* However, it is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). It is well established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

**IV.   Discussion**

Defendants seek summary judgment, arguing that there are no triable issues of material fact. Dckt. No. 54. Their evidence shows that plaintiff received extensive medical care and treatment for his June 24, 2009 wrist injury, which was completely healed as of September 29, 2009. It shows that when plaintiff sought treatment from either Shaw or Medina, they responded by providing plaintiff with pain medication and splinting plaintiff's wrist and placing it in a cast to immobilize it as it healed. Defendants also referred plaintiff for multiple x-rays, referred him to see both the yard doctor and orthopedic specialists, and followed the treatment recommended by those physicians. Defendants contend that there is no evidence that they were deliberately indifferent to plaintiff's medical needs or disregarded a serious risk to plaintiff's health.

////

////

In his opposition, plaintiff "request[s] that defendant R. Shaw be granted summary judgment," but opposes summary judgment for Medina.[15] Dckt. No. 56 at 8, ¶ 4. Plaintiff argues that defendant should not have prescribed him ibuprofen, and that there are genuine disputes for trial regarding whether defendant Medina unreasonably delayed in treating plaintiff's wrist. PF 45; Dckt. No. 56 at 2, 3, 6, 7. As discussed below, the court finds that there is no evidence to establish a genuine issue of fact as to whether either defendant acted with the requisite deliberate indifference for an Eighth Amendment claim.[16]

Plaintiff disputes whether defendants Medina and Shaw knew that plaintiff had an ulcer when they prescribed him ibuprofen. *See* PF 45 (claiming defendants knew plaintiff "had stomach problems and was taking meds for it."). Even if defendants knew when they refilled plaintiff's ibuprofen prescriptions that plaintiff had "stomach problems," as plaintiff contends, there is no evidence that defendants purposefully chose ibuprofen in a conscious disregard to plaintiff's health. For this reason, plaintiff fails to create a material dispute for trial. It is undisputed that Medina and Shaw refilled plaintiff's ibuprofen prescription in response to plaintiff's complaints of pain because plaintiff had previously been prescribed ibuprofen, and because plaintiff was currently taking aspirin. DF 42; PF 42. Defendants note that like ibuprofen, aspirin can cause ulcers, but that plaintiff had been taking aspirin with no complaints. Defs.' MSJ, Mem. of P. & A. in Supp. Thereof at 16; DF 28, 42, 61. When plaintiff complained to Shaw that ibuprofen was "too strong," Shaw ordered Tylenol for plaintiff, a pain reliever that does not cause ulcers. DF 52, 53, 78; PF 52, 53, 28. And when plaintiff complained to Shaw that he could not take ibuprofen because of an ulcer, Shaw scheduled plaintiff to be seen by

---

[15] Thus, plaintiff waives any opposition to Shaw's motion for summary judgment. *See* E.D. Cal. L. R. 230(l).

[16] Defendant Shaw also argues that plaintiff's claim against him should be dismissed as unexhausted under the Prisoner Litigation Reform Act. Because the undersigned finds that Shaw is entitled to summary judgment on alternate grounds, and because plaintiff waives any opposition, this issue need not be addressed.

13

Medina to determine if another medication could be prescribed. DF 59, 60. Shortly thereafter, Medina discontinued plaintiff's ibuprofen prescription, but left the Tylenol prescription in place. DF 61. Drawing all reasonable inferences in plaintiff's favor, no reasonable jury could conclude from this evidence that by initially prescribing plaintiff ibuprofen, defendants were deliberately indifferent to plaintiff's serious medical needs.

Next, plaintiff submits evidence that during his June 25, 2009 appointment with a nurse, "the nurse stopped the examination to talk with P.A. Medina." *Id.* at 2. Defendants object to this statement as lacking foundation. Dckt. No. 57-1, ¶ 1. Defendants' objection is overruled, as plaintiff's declaration shows that he was a percipient witness to the nurse stopping his examination of plaintiff to have a conversation with Medina. Dckt. No. 56 at 2. According to plaintiff, this evidence shows that Medina was aware of plaintiff's injury and need for an urgent x-ray as early as June 25, 2009. *Id.* at 2, 6. However, plaintiff's declaration does not show that plaintiff overheard the actual content of the conversation that took place between the nurse and Medina, and actually suggests that the conversation did not occur in plaintiff's presence. *See id.* at 2 (stating that the nurse stopped the examination to have a conversation with Medina, and "upon his return" diagnosed plaintiff's injury as only a sprain). The fact that a conversation took place does not reasonably support an inference that the conversation concerned plaintiff's wrist injury or that Medina was thereafter deliberately indifferent to plaintiff's need for an urgent x-ray.

Plaintiff also contends that Medina "was made aware by [the nurse] that plaintiff's injury was diagnosed as mandating urgent treatment." *Id.* at 3 (citing to Exhibits A & B of the Complaint (Dckt. No. 1)). Defendants object to this statement as lacking foundation, as speculation, and because the evidence cited does not support the contention. Dckt. No. 57-1, ¶ 3. Defendants' objections are sustained. As noted, while plaintiff was a percipient witness to the nurse stopping the examination to have a conversation with Medina, plaintiff fails to show that he has personal knowledge of the content of that conversation, or any other communication,

14

between the nurse and Medina. While plaintiff contends that the conversation was about his injury, the evidence cited does not support this contention, which appears to be based solely on plaintiff's speculation. Thus, plaintiff fails to create a genuine dispute as to when Medina was aware that plaintiff's injury required treatment.

Defendants submit evidence that the responsibility for locating an outside provider and scheduling an appointment based upon the outside providers' availability rested with the prison's Utilization Management schedulers. DF 15, 16. Plaintiff objects to DF 15 and 16 on the grounds that the prison has contracts with outside medical providers. PF 15, 16 (citing Cal. Code Regs. tit. 15, § 3350.2); *see also* Dckt. No. 56 at 2-3, 8. The fact that such contracts exist, however, is not inconsistent with DF 15 or 16, and thus, does not create a genuine dispute of material fact. It is undisputed that while an x-ray had been ordered for plaintiff as of June 24, 2009, DF 20, PF 20, neither defendant Shaw nor Medina could actually schedule the x-ray for plaintiff. PF 14; DF 14. Plaintiff ultimately received the x-ray on July 7, 2009. DF 30; PF 30. Until that date, plaintiff received medical attention, including pain medication and ice. DF 19, 27; PF 19, 27. Plaintiff fails to show that defendants ignored or purposefully delayed the request for an urgent x-ray, or that the two week wait caused him any additional harm. *See McGuckin*, 974 F.2d at 1060 (delay in medical care must lead to further injury for deliberate indifference claim).

Plaintiff also states that Medina ignored the July 7, 2009 fax and just watched as plaintiff's condition worsened. Dckt. No. 56 at 3, 6, 7. Plaintiff relies on the July 7, 2009 x-ray report, which diagnoses plaintiff's injury as a non-displaced fracture and states, "URGENT FAX - PLEASE SHOW TO THE DOCTOR IMMEDIATELY." *Id.*, Ex. G. The x-ray report notes that the referring provider was the nurse practitioner who requested the x-ray on June 24, 2009, not Medina or Shaw. *Id.*; *see also* DF 20; PF 20. Thus, it cannot be reasonably inferred from this evidence that either Medina or Shaw was notified of the x-ray report prior to July 14, 2009, when they provided plaintiff with a splint. *See* DF 40; PF 40. Thus, defendants' objections to

plaintiff's claim that Medina ignored the fax are well-taken. *See* Dckt. No. 57-1, ¶¶ 4, 6, 7 (objecting as lacking foundation, speculation, and because the evidence cited does not support the contention). Plaintiff also points to his Health Care Services Request Forms to show that he requested, but was denied treatment. However, none of plaintiff's Health Care Services Request Forms pre-dates July 14, 2009. *See* Dckt. No. 56, Ex. I. Plaintiff fails to show that he requested and was denied treatment by either Shaw or Medina in July of 2009. Thus, defendants' objections to plaintiff's claim that Medina just watched as his condition worsened are also well-taken. *See* Dckt. No. 57-1, ¶ 5 (objecting as lacking foundation, speculation, and because the evidence cited does not support the contention). There simply is no evidence suggesting that defendants knew about the July 7, 2009 x-ray report prior to July 14, 2009. Thus, plaintiff fails to raise a genuine dispute as to whether defendants purposefully ignored the July 7, 2009 x-ray report or purposefully delayed in providing plaintiff with a splint.

The evidence establishes that Shaw and Medina provided plaintiff with appropriate medical care to treat his wrist injury. Plaintiff has failed to present any evidence that defendants responded to his wrist injury with deliberate indifference. When the evidence is viewed in the light most favorable to plaintiff, and reasonable inferences are drawn in his favor, no reasonable jury could return a verdict for him and against defendants. Defendants are therefore entitled to judgment as a matter of law.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (Dckt. No. 54) be granted;

2. The Clerk be directed to enter judgment in defendants' favor; and

3. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

16

"Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 22, 2013.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

17